# UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

|  |  |
|---|---|
| In re: )<br><br>FREDERICK SIMS MCRAE, )<br><br>_Debtor._ )<br>———————————————————— ) | Case No. 24-71950-FJS |
| )<br>MATTHEW W. CHENEY, ACTING UNITED )<br>  STATES TRUSTEE FOR REGION FOUR, )<br>)<br>_Plaintiff,_ )<br>)<br>v. )<br>)<br>FREDERICK SIMS MCRAE, )<br>)<br>_Defendant._ )<br>———————————————————— ) | APN 25-07004-FJS<br><br><br>Chapter 7 |

## MEMORANDUM OPINION

On February 20, 2025, Matthew W. Cheney, Acting United States Trustee for Region Four (the "UST") filed a Complaint against Frederick Sims McRae (the "Debtor"), seeking a denial of his discharge pursuant to 11 U.S.C. §§ 727(a)(2)(B), 727(a)(3), 727(a)(4)(A), and 727(a)(6)(A). Accordingly, this adversary proceeding constitutes a core proceeding over which this Court has jurisdiction under 28 U.S.C. §§ 157(b)(2)(J) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

This matter came before the Court on June 3, 2025, for an evidentiary hearing on the UST's motion for entry of default judgment against the Debtor filed on April 2, 2025 (the "Motion for Default Judgment"), pursuant to Federal Rule of Civil Procedure 55(b)(2), made applicable in this proceeding by Federal Rule of Bankruptcy Procedure 7055, and Local Bankruptcy Rule 7055-

1(B)(2). Counsel for the UST and the *pro se* Debtor appeared. Counsel for the UST submitted documentary evidence and testimony elicited from the Debtor in support of the Motion for Default Judgment. The Debtor contested the relief requested and the underlying entry of default, asserting that he had not received the Complaint or any pleadings in this matter.

Following the hearing, the Court permitted the parties to file post-hearing briefs in support of their respective arguments. After consideration of the evidence, pleadings, briefs, and arguments made at the hearing, this matter is ripe for determination. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7052.

## I.   Factual and Procedural History

The Debtor filed a chapter 7 bankruptcy case, *pro se*, on September 11, 2024, designated as Case No. 24-71950-FJS. On his voluntary petition, the Debtor listed his place of residence as 1729 Princeton Ave., Norfolk, VA 23523 (the "Princeton Address") and did not designate any other address as his mailing address. Pet. at 2, ECF No. 1, Case No. 24-71950-FJS. The Debtor did not enroll in the Debtor Electronic Bankruptcy Noticing program whereby debtors may elect to receive court-issued notices and orders by email rather than first class mail.

The day after the Debtor filed his petition, the Clerk issued the Order to Debtor, which provided, among other things, that the Debtor must preserve and provide upon request all personal financial and business records, cooperate with the chapter 7 trustee, and provide the chapter 7 trustee with certain personal and financial information prior to the 11 U.S.C. § 341 meeting of creditors. ECF No. 12.

The Debtor filed all required schedules and statements two weeks prior to the § 341 meeting of creditors, which was originally scheduled for October 8, 2024. ECF No. 17. The chapter

7 trustee held and adjourned the initial meeting of creditors to three subsequent dates, with a final

adjourned date of November 15, 2024. ECF Nos. 19, 21-22. The chapter 7 trustee filed a report on

January 29, 2025, indicating that her inquiry into the Debtor's financial affairs revealed there

would be no property available for distribution to creditors. ECF No. 34.

By motion filed on January 21, 2025, the UST requested the entry of an order directing the

Debtor to submit to an oral examination and produce documents pursuant to Federal Rule of

Bankruptcy Procedure 2004 (the "Rule 2004 Exam Motion"), to determine the accuracy of the

information supplied by the Debtor in connection with his bankruptcy case. ECF No. 33. Without

objection, the Court entered an order on February 3, 2025, requiring the Debtor to submit to an

oral examination on February 11, 2025, and provide tax returns and other enumerated financial

documents by February 7, 2025 (the "Rule 2004 Exam Order"). ECF No. 35. The Bankruptcy

Noticing Center sent notice of the Rule 2004 Exam Order to the Debtor at the Princeton Address

via first class mail on February 5, 2025. Cert. of Notice, ECF No. 36.

After concluding the examination, the UST initiated the instant adversary proceeding on

February 20, 2025, with the filing of a Complaint seeking the denial of the Debtor's discharge (the

"Complaint"). AP No. 1. The Complaint sets forth four counts. Count I seeks relief

under § 727(a)(2)(B), alleging that after filing the petition, the Debtor failed to disclose his interest

in F Mac Capital & Holdings, Inc., bitcoin, and financial accounts with Apple Cash, Cash App,

Chime, and Navy Federal Credit Union, in which he possessed an interest on the petition date.

Count II seeks relief under § 727(a)(3) on the basis of the Debtor's alleged failure to provide

documentation with respect to a limousine service business venture, accounts with Apple Cash

and Cash App, the source of funds for pre-petition deposits, the disposition of funds from a pre-

petition payment, his last-filed state and federal tax returns, and the sources of his post-petition

income. Count III seeks relief under § 727(a)(4)(A), alleging that the Debtor made a false oath or account by making materially false statements concerning his assets, income, and expenses in his bankruptcy schedules, on his chapter 7 filing fee waiver application, and when he was examined under oath. Finally, Count IV seeks relief under § 727(a)(6)(A) because of the Debtor's alleged failure to disclose assets and provide financial documents in violation of the Order to Debtor and to produce documents pursuant to the 2004 Exam Order.

The Clerk issued a summons and initial scheduling order on February 21, 2025. AP No. 2. The summons set a deadline of March 24, 2025, to file an answer to the Complaint or other motion and scheduled a pretrial conference for April 8, 2025. *Id.* The Certificate of Service filed on February 24, 2025, states that the UST served the Debtor with the summons, initial scheduling order, and a copy of the Complaint at the Princeton Address via regular, first class United States mail, postage prepaid. AP No. 3.

The Debtor did not file an answer to the Complaint or other motion by the applicable deadline. On March 25, 2025, the UST moved for entry of default by the Clerk pursuant to Federal Rule of Civil Procedure 55(a), made applicable in this proceeding by Federal Rule of Bankruptcy Procedure 7055 and Local Bankruptcy Rule 7055-1(A) (the "Motion for Entry of Default"). AP No. 4. The Certificate of Service for the Motion for Entry of Default states that the Debtor was served with the motion at the Princeton Address via first class United States mail, postage prepaid. Notice of Mot. at 3, AP No. 4-1. The Clerk entered a default against the Debtor on March 26, 2025 (the "Entry of Default") based upon the Debtor's failure to plead or otherwise defend. AP No. 5. After obtaining the entry of default, the UST filed the Motion for Default Judgment on April 2, 2025, and scheduled the motion for a hearing to be convened on May 6, 2025. Notice of Mot. at 2, AP No. 6-1. The Certificate of Service for the Motion for Default Judgment states the Debtor

was served with the motion and notice of the hearing at the Princeton Address via first class United States mail, postage prepaid. *Id.* at 3. The Bankruptcy Noticing Center also provided the Debtor with notice of the hearing on the Motion for Default Judgment via first class mail. Cert. of Notice, AP No. 10.

The Court convened the pretrial conference as scheduled on April 8, 2025. Counsel for the UST appeared but the Debtor did not. The Court continued the pretrial conference to be reconvened contemporaneously with the hearing on the Motion for Default Judgment, which was rescheduled to May 20, 2025. On May 2, 2025, the Bankruptcy Noticing Center provided the Debtor with notice of the rescheduled hearing via first class mail to the Princeton Address. Cert. of Notice, AP No. 12. The Debtor did not respond to the Motion for Default Judgment or appear at the hearing held on May 20, 2025. Notwithstanding the Debtor's failure to appear, the Court continued the pretrial conference and the hearing on the Motion for Default Judgment to be reconvened contemporaneously with the hearing on the Debtor's motion to dismiss his chapter 7 bankruptcy case, which was scheduled for June 3, 2025 (the "Motion to Dismiss").[1]

The Debtor appeared on June 3, 2025, on his Motion to Dismiss, which the Court denied.[2] The Debtor also opposed the entry of default judgment. He asserted that he did not receive the summons, initial scheduling order, and a copy of the Complaint by mail at the Princeton Address and, in fact, could not recall receiving any mailed notices related to his bankruptcy case apart from mail to creditors that was returned to him. *See* June 3, 2025 Hr'g Tr. (hereinafter "Tr.") 40:11-14,

---

[1] The Debtor sought to voluntarily dismiss his chapter 7 bankruptcy case because he did not appreciate the complexity of the bankruptcy process and the attendant consequences when he made the decision to proceed in his case without an attorney. Mot. to Dismiss at 2, ECF No. 38. The Court scheduled a hearing on the Motion to Dismiss for June 3, 2025. The Bankruptcy Noticing Center sent notice of the hearing on the Motion to Dismiss to the Debtor via first class mail to the Princeton Address. Cert. of Notice, ECF No. 40.

[2] The Court denied the Motion to Dismiss by order entered on June 10, 2025, because the Debtor failed to present any evidence to sustain his burden to establish cause for dismissal under § 707(a). Order Denying Mot. to Dismiss at 2-3, ECF No. 43.

44:3-19, 99:14-19, AP No. 17. He contended that if had he been aware of the Complaint, he would have filed an answer and appeared at the pretrial conference. *Id.* 99:21-25. The Debtor also contested the merits of the allegations in the Complaint. In deference to the Debtor's *pro se* status, *see Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir. 1989), the Court construes the Debtor's arguments at the hearing both as an oral motion to set aside the Entry of Default and to deny the Motion for Default Judgment.

## II.    Finding of Fact and Conclusions of Law

"Obtaining default judgment is a two-step process." *Clemson Grande Lakefront Condos., LLC v. First Fin. Equities Com., LLC* (*In re Clemson Grande Lakefront Condos., LLC*), 472 B.R. 703, 704 (Bankr. D.S.C. 2012). The entry of default is a prerequisite for the subsequent entry of default judgment. *Royal v. Lee*, No. 1:17-cv-261-TSE/TCB, 2018 WL 10772683, at *1 (E.D. Va. Nov. 6, 2018) (citing *Husain v. Casino Control Comm'n*, 265 F. App'x 130, 133 (3d Cir. 2008); *Danielson v. Human*, No. 3:12-cv-840-FDW-DSC, 2013 WL 12218467, at *1 (W.D.N.C. Oct. 21, 2013)); *see also* LBR 7055-1(B)(2)(b)(iv). Accordingly, first, upon proper motion by the plaintiff, the clerk must enter default against any defendant who fails to serve an answer or motion within the thirty days after issuance of the summons. Fed. R. Bankr. P. 7055; Fed. R. Civ. P. 55(a); LBR 7055-1(A). The entry of default against a defendant who fails to plead or otherwise defend against a complaint is a ministerial function performed by the clerk based solely upon whether the objective criteria of the applicable rules are satisfied. *See Nationwide Mut. Fire Ins. Co. v. Superior Sol., LLC*, No. 2:16-cv-423-PMD, 2016 WL 6648705, at *2 (D.S.C. Nov. 10, 2016); *see also* LBR 7055-1(A). Upon the entry of default, the defendant is deemed to admit the well-pleaded factual allegations of the complaint. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

The Fourth Circuit has a "strong preference" that "claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *see also United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). But there are exceptions to this policy. *Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F. Supp. 3d 727, 740 (D. Md. 2023). Entry of "default judgment is appropriate 'when the adversary process has been halted because of an essentially unresponsive party.'" *Cournoyer v. Buckner* (*In re Fuller*), Adv. No. 24-02009, 2024 WL 5320021, at *6 (Bankr. M.D.N.C. Nov. 20, 2024) (quoting *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)). In instances where default judgment may be appropriate, the court may only enter default judgment if it is satisfied that the well-pleaded allegations of the complaint support the relief requested. *Ryan*, 253 F.3d at 780.

A defaulting party may seek relief from the consequences of their inaction before the entry of default judgment by requesting to set aside the entry of default. "[W]hen a party is in default, but default judgment has not yet been entered, the governing legal standard is one of 'good cause' . . . ." *Wards Corner Beauty Acad. v. Nat'l Accrediting Comm'n of Career Arts & Scis.*, No. 2:16cv639, 2017 WL 11509751, at *1 (E.D. Va. Sept. 19, 2017) (citations omitted). This standard is "more forgiving" than the "excusable neglect" standard applicable to requests for relief from default judgment because an entry of default "does not implicate any interest in finality." *Colleton Preparatory Acad.*, 616 F.3d at 420.

A.  Has the Debtor Demonstrated Good Cause to Set Aside the Entry of Default?

The Court must determine whether the Debtor has articulated good cause to grant his oral motion to set aside the Entry of Default. If the Court finds that good cause exists and sets aside the Entry of Default, the UST necessarily cannot prevail on the Motion for Default Judgment. If the Debtor cannot demonstrate good cause to set aside the Entry of Default, then the allegations in the

Complaint are deemed admitted, and the Court must determine if such allegations support the entry of default judgment.

The determination regarding whether good cause exists to set aside an entry of default is within the broad discretion of the trial court. A court analyzes the existence of "good cause" by weighing the following factors articulated by the Fourth Circuit in *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198 (4th Cir. 2006): "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the [non-defaulting] party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Id.* at 204-05 (citations omitted). These factors must be liberally construed in favor of the defaulting party "in order to provide relief from the onerous consequences of defaults and default judgments." *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)). The Court addresses each factor below.

### *1. Reasonable Promptness*

Whether the Debtor acted with "reasonable promptness" to set aside the entry of default is determined in light of the relevant facts and circumstances. *See United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). Within the Fourth Circuit, courts "have found that a defendant acted reasonably promptly when waiting seventeen, twenty-one, and thirty-two days after default was entered before attempting to set it aside." *Parks v. Disc. Box & Pallet, Inc.*, No. 5:12CV081, 2013 WL 662951, at *6 (W.D. Va. Feb. 22, 2013) (citing *United States v. $10,000.000 in United States Currency*, 2002 WL 1009734, at *3 (M.D.N.C. Jan. 29, 2002); *Esteppe v. Patapsco & Back Rivers R.R. Co.*, 2001 WL 604186, at *4 (D. Md. May 31, 2001); *Wainwright's Vacations v. Pan Am. Airways Corp.*, 130 F.Supp.2d 712, 718 (D. Md. 2001)) (finding that the a defendant that filed a

responsive pleading twenty-five days following entry of default "falls within the range deemed reasonably prompt" by other courts); *but see Lolatchy*, 816 F.2d at 953 n.2 (holding that good cause existed to set aside an entry of default where counsel—who failed to move to set aside the default for ten months—was "busy and diligent" while actively participating in the damages aspect of the case).

In this case, the Debtor did not seek to set aside the Entry of Default until June 3, 2025, when he appeared at the continued hearing on the Motion for Default Judgment and denied having received the summons, initial scheduling order, and Complaint, which the Court has construed as an oral motion to set aside the Entry of Default. At that point, the adversary proceeding had been pending for three and a half months. His appearance coincided with his appearance on his own Motion to Dismiss. The only explanation offered for the Debtor's inaction was that he did not receive the pleadings mailed to the Princeton Address and was unaware of the pending adversary proceeding. Tr. 40:11-14, 44:3-19, 99:14-25.

An item that is properly addressed, stamped, and mailed gives rise to a presumption that the item was received. *See In re Burton-Alston*, No. 97-16333, 2006 WL 12904, at *2 (Bankr. M.D.N.C. Jan. 3, 2006); *In re Parandeh*, No. 14-12578-BFK, 2015 WL 430383, at *5 (Bankr. E.D. Va. Jan. 28, 2015) (citing *In re Weiss*, 111 F.3d 1159, 1172-73 (4th Cir. 1997); *Fed. Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1137 n.6 (4th Cir. 1984)). To determine whether the presumption arises, "courts may consider whether the notice was correctly addressed, whether proper postage was affixed, whether it was properly mailed, and whether a proper certificate of service was filed." *In re Perkins*, No. 10-03041-JW, 2011 WL 3163294, at *2 (Bankr. D.S.C. Feb. 8, 2011) (quoting *Greyhound Lines, Inc. v. Rogers* (*In re Eagle Bus Mfg., Inc.*), 62 F.3d 730, 736 (5th Cir. 1995)). The Princeton Address is the Debtor's address of record in this case. Pet. at 2,

ECF No. 1. The Certificate of Service for the summons, initial scheduling order, and Complaint states that the Debtor was served at the Princeton Address via first class United States mail, postage prepaid, as required pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(9). AP No. 3. The UST has argued that the presumption arises that the Debtor received the Complaint, summons, and initial scheduling order. *See* Supp. Br. at 10, AP No. 22. The Court agrees. Furthermore, the Certificates of Service for the Motion for Entry of Default and Motion for Default Judgement also state that the Debtor was served at the Princeton Address via first class United States mail, postage prepaid, likewise giving rise to the presumption of receipt of those pleadings. *See* Notice of Mot. at 3, AP No. 4-1; Notice of Mot. at 3, AP No. 6-1. The presumption of receipt may only be overcome by "strong evidence to the contrary." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 451 (4th Cir. 2007) (A "general denial does not constitute the strong evidence needed to overcome the presumption of receipt."). But if the Debtor can rebut the presumption of receipt and establish that he was in fact unaware of the pendency of this adversary proceeding, his eleventh-hour appearance might be considered reasonably prompt.

The Debtor denied that he saw the Complaint or any mail pertaining to his bankruptcy case delivered to the Princeton Address apart from returned mail sent to creditors. Tr. 40:11-14, 44:3-19, 99:14-25. To explain why he did not receive his case-related mail, he offered only that mail is delivered to the ground or stairs outside the Princeton Address. *Id.* 40:7-8. The Debtor admitted, however, that he has received other mail at the Princeton Address. *Id.* 40:4-10. To accept the Debtor's explanation as credible would demand an inference that somehow only his bankruptcy-related mailings disappeared or were damaged beyond recognition following their delivery to the exterior of the Debtor's residence. The Court declines to draw this inference and finds that the Debtor has failed to rebut the presumption of receipt.

It was the Debtor's decision to list and maintain the Princeton Address as his address of record in his bankruptcy case. While the Debtor attributed this decision to his unawareness of the allegedly missing mail, the Court finds that it is more plausible that the Debtor listed and maintained the Princeton Address as his address of record because it is a reliable address. Because the Debtor has failed to rebut the presumption of receipt, the Court finds that the Debtor was on notice of the pending adversary proceeding and aware of his failure to respond but elected not to take any action until his appearance on June 3, 2025. Accordingly, the Court finds that the Debtor failed to act with reasonable promptness to set aside the Entry of Default. This factor weighs against setting aside the Entry of Default.

### 2. *Personal Responsibility*

A defaulting party's personal responsibility is determined by examining whether the default occurred due to circumstances beyond the party's control. "Courts have discretion to deny setting aside entry of default when the party's default was intentional or the result of negligence." *Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp.*, 812 F. Supp. 2d 710, 726 (E.D. Va. 2011) (citing 10 James Wm. Moore et al., Moore's Federal Practice ¶ 55.70 (3d ed. 2011)). The Court has already rejected the Debtor's attempt to assign blame for his default to the mail service to the Princeton Address and incorporates its findings set forth above. The Debtor has offered no other explanation for his default. Accordingly, the Court finds that the responsibility for the Debtor's failure to file an answer or motion is his alone. This factor weighs against setting aside the Entry of Default.

### 3.  Meritorious Defense

To establish the existence of a meritorious defense, a defendant is not required to convince the court that he is likely to successfully defend against the plaintiff's claims at trial.  Rather, "[t]he underlying concern is . . .  whether there is *some possibility* that the outcome . . . after a full trial will be contrary to the result achieved by the default." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (emphasis added) (quoting 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2697, p. 531 (2d ed. 1983)); *see also Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ("To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage."). Indeed, at this stage, the defense offered may even be tenuous. *See Rasmussen v. Am. Nat. Red Cross*, 155 F.R.D. 549, 552 (S.D.W. Va. 1994) (finding the defendant's defense to be "tenuous" but "recoginiz[ing] the general policy of deciding cases on their merits"). While the establishment of a meritorious defense does not impose a demanding burden upon a defendant, the defendant's argument must be based upon more than bare allegations, conclusory assertions, or general denials of the plaintiff's claims. *See Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 251-52 (4th Cir. 1967); *Mayrant v. Norfolk Redevelopment & Hous. Auth.*, Civ. No. 2:24cv715, 2025 WL 2738859, at *7 (E.D. Va. Sept. 23, 2025).

When a defendant seeks to set aside an entry of default with respect to a complaint that includes multiple, independent claims for relief, courts have held that the defendant need only establish a meritorious defense to at least one of the plaintiff's claims. *See, e.g., Wildflower + Co. v. Mood Apparel, Ltd.*, 338 F.R.D. 192, 198 (S.D.N.Y. 2021) ("As long as the defendant has a meritorious defense for one of the plaintiff's claims, and that claim is independent of any other

claim in the case, the factfinder will have some determination to make."); *Percival v. Chronister*, No: 8:23-cv-01243-KKM-JSS, 2024 WL 1655363, at *2 (M.D. Fla. Apr. 17, 2024) (setting aside an entry of default where the defendants "raised credible arguments that at least some of [the plaintiff's] claims lack merit") ; *Hilseweck P'ship v. E. Energy Res., Inc.*, No. 3:11-CV-0186-D, 2011 WL 3501719, at *2 (N.D. Tex. Aug. 9, 2011) (setting aside an entry of default when the defendant presented 'a potentially meritorious defense to at least one of plaintiffs' claims"); *Molly Maid, Inc. v. O'Daniel*, No. 10-CV-13337, 2011 WL 3113108, at *2 (E.D. Mich. June 20, 2011) (setting aside an entry of default where the defendant "may have a meritorious defense to at least one claim set forth in the Complaint").

The Court must consider whether the Debtor has established a meritorious defense to any of the counts of the Complaint. Although the Debtor did not file a written motion to set aside or propose a late answer, he offered testimony at the hearing held on June 3, 2025, which the Court finds raises the existence of a meritorious defense to more than one of the UST's claims.

Intent is an element of Counts I, III, and IV of the Complaint. To deny the Debtor's discharge under Count I of the Complaint, which arises under § 727(a)(2)(B), the Court must find that the Debtor acted with the intent to hinder, delay, or defraud when, after the filing of the petition, he transferred, removed, destroyed, mutilated, or concealed the business interest and financial accounts identified in the Complaint. *See* § 727(a)(2)(B). The post-petition conduct alleged in the Complaint is the Debtor's failure to disclose his interests in bitcoin, an Apple Cash account, a Cash App account, a Chime checking account, a Navy Federal Credit Union savings account, and his inconsistent statements regarding his interest in F Mac Capital & Holdings, Inc. To prevail, the UST must establish that the Debtor engaged in the alleged conduct with the actual intent to either defraud creditors or to hinder or delay creditors. *Branch Banking & Trust Co. v.*

*Evans* (*In re Evans*), 538 B.R. 268, 286 (Bankr. W.D. Va. 2015) (observing that the disjunctive phrasing reflects that the intent may be to hinder or delay creditors and not necessarily to defraud). Courts generally infer the debtor's intent by examining circumstantial evidence, including "the debtor's sophistication to appreciate his responsibility to disclose his assets, representation by counsel, inordinately high number of omissions from statements, and pattern of reckless behavior toward his duties to the court." *Id.* at 285-86.

The Debtor did not deny that he failed to properly disclose the financial accounts or his interest in F Mac Capital & Holdings, Inc. Instead, he testified that he did not realize he still had an open account with Navy Federal Credit Union and failed to appreciate that non-traditional digital payment methods and accounts required disclosure, including those with *de minimis* balances, and that he believed he had made disclosures by providing account statements to the UST post-petition. Tr. 3:8-18, 38:1-15. He further testified that F Mac Capital & Holdings, Inc. is not operational. *Id.* 58:24-59:8. The Debtor's testimony was more than merely conclusory in that he offered explanations for his conduct that shed light on his state of mind. If offered at trial and accepted as credible, this testimony suggests that the Debtor may be able to present sufficient circumstantial evidence to undermine a finding of intent to hinder, delay, or defraud creditors, which is an essential element of the UST's claim for relief under § 727(a)(2)(B). Accordingly, the Court finds that the Debtor has established the existence of a meritorious defense to Count I.

Count III of the Complaint, which arises under § 727(a)(4)(A), also includes an element of intent. "'To deny a debtor['s] [] discharge under § 727(a)(4)(A), the objecting creditor must prove that 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case.'" *Johnson-Clayton v. Ferebee* (*In re Ferebee*), No. 09-

75200-SCS, 2012 WL 506740, at *12 (Bankr. E.D. Va. Feb. 15, 2012) (citations and internal quotation omitted) (quoting *Faircloth v. Palmer* (*In re Palmer*), No. 05-6017, 2007 WL 2253274, at *3 (Bankr. N.D.W. Va. Aug. 1, 2007)). Misstatements or omissions in bankruptcy schedules and statements, at a Section 341 meeting of creditors, and Rule 2004 examination are considered false statements made under oath, which may warrant the denial of a debtor's discharge 11 U.S.C. § 727(a)(4)(A) if they are material and made with fraudulent intent. *See Mazer-Marino v. Schiltkamp* (*In re Schiltkamp*), No. 16-13037 (SMB), 2019 WL 1084192, at *7 (Bankr. S.D.N.Y. Mar. 6, 2019). "[A] statement or omission is material if it adversely affects the ability of the trustee or creditors to fully discover the debtor's assets and financial condition." *Jalajel v. Pugsley*, No. 1:11CV163 LMB/IDD, 2011 WL 1348312, at *2 (E.D. Va. Apr. 8, 2011) (citing *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 251 n.19 (4th Cir. 1994)). Whether a statement or omission is made with fraudulent intent is typically determined by reference to circumstantial evidence or from a pattern of conduct. *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir. 1987) (citing *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985); *Farmers Co-operative Assoc. v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982)); *see also United Bank of the Middle East, Ltd. v. Farouki* (*In re Farouki*), 133 B.R. 769, 780 (Bankr. E.D. Va. 1991), *aff'd sub nom. Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244 (4th Cir. 1994) (citing *In re Tully*, 818 F.2d 106, 112 (1st Cir.1987)) (observing that "'reckless indifference to the truth' is the functional equivalent of fraud"). As a result, a court's determination regarding fraudulent intent relies heavily upon its "assessment of the credibility and demeanor of the debtor." *Williamson*, 828 F.2d at 252.

The UST alleges the Debtor knowingly and fraudulently made multiple false statements in his bankruptcy schedules, statements, and filing fee waiver application and during his Section 341 meeting of creditors and Rule 2004 examination. In his testimony, the Debtor offered explanations

for the alleged inaccuracies. He contested that he possessed or realized that he possessed any interest in certain undisclosed assets, cited a lack of understanding regarding the information he was required to disclose, and variously described the basis for his beliefs that the challenged disclosures and testimony were accurate, which circumstantial evidence could establish were reasonable and held in good faith even if misinformed. *See generally* Tr. 3:8-113:10. These explanations, if believed, would militate against an inference of fraudulent intent. Therefore, because the Debtor could conceivably prove at trial that he lacked the fraudulent intent necessary for the UST to prevail on its claim for relief under § 727(a)(4)(A), the Court finds that the Debtor has established the existence of a meritorious defense to Count III of the Complaint.

Finally, Count IV of the Complaint seeks denial of the Debtor's discharge under § 727(a)(6)(A). To obtain relief under § 727(a)(6)(A), the UST must establish that the debtor refused to obey any lawful order of the Court. The Fourth Circuit has held that "refused" is not synonymous with "failed." *Smith v. Jordan* (*In re Jordan*), 521 F.3d 430, 433 (4th Cir. 2008). Rather, denial of a discharge under § 727(a)(6)(A) requires a finding that "'the debtor willfully and intentionally refused to obey the court's order. Thus, the trustee must show more than a mere failure to obey the court's order that results from inadvertence, mistake, or inability to comply; he must demonstrate some degree of volition or willfulness on the part of the debtor.'" *Id.* at 434 (quoting *Jordan v. Smith*, 356 B.R. 656, 660 (E.D. Va. 2006)). If the plaintiff establishes that the debtor received a court order and failed to comply with its terms, the burden then shifts to the debtor to explain his non-compliance. *See id.* In Count IV, the UST alleges that the Debtor refused to comply with the Order to Debtor by concealing assets and failing to provide documents to and cooperate with the chapter 7 trustee and with the Rule 2004 Exam Order by failing to provide the UST with certain documents listed therein.

As discussed above, the Debtor's testimony attributed his failure to disclose certain assets to his lack of awareness that he possessed certain assets and misinformed conclusions about what must be disclosed. He also testified that he made his best efforts to provide all requested documents based upon the records he had and could produce within the time available. Tr. 48:2-15, 53:1-54:20. These explanations, if credible, may be sufficient to establish that the Debtor's noncompliance with the Court's orders was the result of mistake, inadvertence, or inability to comply, which would defeat the UST"s claim for relief under § 727(a)(6)(A). Accordingly, the Court finds that the Debtor has satisfied his burden to demonstrate the possibility of a meritorious defense to Count IV.

In Count II of the Complaint, the UST seeks relief under § 727(a)(3), alleging that the Debtor failed to keep adequate records from his Apple Cash and Cash App accounts, sources of pre-petition deposits, sources of post-petition income, tax returns, and a limousine service business venture. Unlike the UST's other claims for relief, relief under § 727(a)(3) does not requiring a finding of intent. A debtor will be denied a discharge pursuant to § 727(a)(3) if the court finds that "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." § 727(a)(3). This exception is rooted in the policy that a debtor cannot receive the benefit of a discharge unless the debtor has "give[n] creditors sufficient information from which they can assess the debtor's estate and general financial posture." *In re Farouki*, 133 B.R. at 780-81. The court has "substantial discretion" to assess whether a debtor's recordkeeping is reasonable under the circumstances. *United States Trustee v. Sieber* (*In re Sieber*), 489 B.R. 531, 550 (Bankr. D. Md. 2013). This assessment includes

consideration of "the complexity and volume of the business; the amount of the debtor's obligations; whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; the debtor's education, business experience and sophistication; the customary business practices for record keeping in the debtor's type of business; the degree of accuracy disclosed by the debtor's existing books and records; the extent of any egregious conduct on the debtor's part; and the debtor's courtroom demeanor." *Id.* (quoting *Pereira v. Gardner* (*In re Gardner*), 384 B.R. 654, 665 (Bankr. S.D.N.Y. 2008)). If the objecting party establishes by a preponderance of the evidence that the debtor maintained insufficient records, "'the burden of production shifts to the debtor to produce additional credible evidence to rebut the proof of insufficient records, or to justify the absence of records.'" *Id*. (quoting *In re Gardner*, 384 B.R. at 665).

In his testimony, the Debtor claimed that he had provided a number of the financial records identified by the UST and provided specific explanations for his failure to produce others. For example, in his testimony, the Debtor stated that he earned income from barbering and other side jobs for which no formal documentation existed. Tr. 23:20-25:23, 27:4-10. He also testified that he had not obtained W-2s or filed income tax returns in the years immediately preceding the filing of his bankruptcy case but had provided his last-filed tax returns to the UST despite the allegations to the contrary. *Id.* 51:3-21, 54:1-20. The Debtor denied having an Apple Cash account—believing that to be distinct from Apple Pay, *see id.* 4:12, 38:7-11—and claimed that he had not provided the totality of his Cash App statements because he did not have sufficient time to print all his records, *id.* 53:1-4. He also denied that any documentation of the limousine service business venture exists because the venture was only a tentative, informal arrangement with his girlfriend and son. *See id.* 80:20-81:12. The Debtor's testimony suggests that if the UST established that his

recordkeeping was insufficient, the Debtor may be able to prove that certain records do not exist or that he was unable to provide them for reasons that are justifiable under the circumstances, which would be sufficient to defend against a denial of discharge under § 727(a)(3). The Court therefore finds that the Debtor has satisfied his burden to raise the existence of a meritorious defense to Count II.

The existence of meritorious defenses to the Complaint weighs in favor of setting aside the Entry of Default.

### 4.   Prejudice to the UST

To assess whether the non-defaulting party has been prejudiced, courts consider—

> whether the delay [caused by the default]: (1) made it impossible for the non-defaulting party to present some of its evidence; (2) made it more difficult for the non-defaulting party to proceed with trial; (3) hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud.

*Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp.*, 812 F. Supp. 2d 710, 727 (E.D. Va. 2011) (quoting *Vick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009)) (quotation marks omitted). The majority of the weight is given to the first two factors. *Burton v. The TJX Companies, Inc.*, No. 3:07-CV-760, 2008 WL 1944033, at *4 (E.D. Va. May 1, 2008) (citing *Lolatchy*, 816 F.2d at 952-53). Courts have generally found that the threat of prejudice is greater when no factual basis for a meritorious defense exists. *Cielinski v. Kitchen* (*In re Tires & Terms of Columbus, Inc.*), 262 B.R. 885, 889 (Bankr. M.D. Ga. 2000) (citations omitted).

Here, the Court has determined that the Debtor has satisfied his burden to establish the existence of a meritorious defense to the Complaint. The requirement that the UST advance its case on the merits is not prejudicial but rather "a burden inherent in prosecuting a lawsuit to conclusion." *Mangan v. Value Health Care Servs., LLC* (*In re Walnut Hill, Inc.*), No. 16-20960

(JJT), 2017 WL 4653003, at *2 (Bankr. D. Conn. Oct. 13, 2017). As discussed above, the Debtor

has admitted to much of the conduct alleged by the UST. The UST's ability to proceed with its

claims will not be impaired if the Debtor is afforded the opportunity to present evidence regarding

his state of mind and any justification he has for his failure to comply with his duties. Further, no

discovery deadlines have been set in this matter and there is no indication the default was used by

the Debtor to commit a fraud. Accordingly, this factor weighs in favor setting aside the Entry of

Default.

### 5. *History of Dilatory Action*

The Debtor has no history of dilatory action in this matter apart from his failure to respond,

which is the subject of this decision. Following the hearing, he complied with the Court's deadline

for the submission of a post-trial brief. Accordingly, during his limited period of participation in

this adversary proceeding, the Debtor has not engaged in any further dilatory behavior. This factor

weighs in favor of setting aside the Entry of Default.

### 6. *Availability of Other Sanctions*

The final factor is whether alternative sanctions short of default are available. Courts often

consider whether the default could be remedied through requiring the defaulting party to pay the

plaintiff's attorneys fees or other monetary sanctions. *See McKesson Med.-Surgical, Inc. v. Flower

Orthopedics Corp.*, No. 3:17CV631, 2018 WL 944375, at *7 (E.D. Va. Feb. 16, 2018). Here, the

Plaintiff is a governmental official who is not represented by private counsel, and the Debtor is

insolvent. Accordingly, the Court finds that lesser sanctions are not available under the

circumstances. This factor weighs against setting aside the Entry of Default.

### III.  Conclusion

The final step is the balancing of the *Payne* factors. An equal number of factors weigh in favor of and against setting aside the Entry of Default. However, the existence of meritorious defenses to the Complaint warrants special emphasis given the strong preference in this Circuit in favor of deciding cases on their merits. Furthermore, the consequences of default and default judgment are especially onerous for the Debtor as the denial of his discharge in this case would also render his debts nondischargeable in any future bankruptcy case whereas proceeding to trial would impose minimal prejudice on the UST. Therefore, on balance, and in view of the overarching policy considerations, the Court finds that good cause exists to set aside the Entry of Default so that the Debtor may present his defenses at a trial on the merits.

Accordingly, the Debtor's oral motion to set aside the Entry of Default is granted. Because the Entry of Default will be set aside, the UST's Motion for Default Judgment is denied. The Court will permit the Debtor to file a late answer to the Complaint so that this matter may proceed to trial.

A separate Order will be entered by the Court consistent with the findings and conclusions contained in this Memorandum Opinion.

The Clerk shall deliver copies of this Memorandum Opinion to Matthew W. Cheney, Acting United States Trustee for Region Four, and to the Debtor at his address of record.[3]

Entered this 20th day of February 2026, at Norfolk in the Eastern District of Virginia.

FRANK J. SANTORO
United States Bankruptcy Judge

Entered on Docket: Feb 20 2026

---

[3] The Court's record reflects that the Debtor still maintains the Princeton Address as his address of record.